# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICKY CHARLTON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.  22-cv-5145** |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                      **December 13, 2023**

Plaintiff Ricky Charlton filed this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's decision denying his claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review is **DENIED**.

## I.    PROCEDURAL HISTORY

On August 18, 2015, Plaintiff protectively filed an application for SSI, alleging disability beginning on December 20, 2014, due to hypertension, high cholesterol, mental issues, back pain, GERD, knee problems, allergies, and anxiety.  (R. 156-57, 182).  Plaintiff's application was denied on the initial level on December 9, 2015, and he requested a hearing before an Administrative Law Judge (ALJ).  (R. 89-97).  The hearing occurred on February 22, 2018.  (R. 38-69).  Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert (VE).  (*Id.*).  On April 27, 2018, the ALJ issued a decision denying benefits under the Act.  (R. 9-26).  Plaintiff requested review of the decision.  (R. 154).  The Appeals

Council notified Plaintiff that his request was untimely and asked for reasons and supporting evidence for why he did not file the request on time.  (R. 7-8).  A letter from Plaintiff's primary care physician, Akilah Bates, M.D., dated February 26, 2019, was submitted asking Plaintiff to be "excused for any lateness as his medical condition was the cause."  (R. 6).  On May 1, 2019, the Appeals Council found good reason for the delay, and it denied the request for review on its merits.  (R. 1-8).

Plaintiff filed a Complaint in this Court on July 2, 2019.  (No. 19-cv-2896, Compl., ECF No. 2).  On October 8, 2021, the Honorable Marilyn Heffley granted the Commissioner's unopposed motion to remand under the fourth sentence of 42 U.S.C. § 405(g).  (*Id.*, Order, ECF No. 25; Judgment, ECF No. 26).

On January 19, 2022, the Appeals Council vacated the Commissioner's final decision and remanded this case to a different ALJ pursuant to the ruling in *Carr v. Saul*, 141 S. Ct. 1352 (2021).  (R. 853-57).  A hearing was conducted on September 8, 2022, and Plaintiff, who was represented by counsel, and a VE testified.  (R. 828-49).  On September 21, 2022, the ALJ issued a partially favorable decision finding that Plaintiff was not disabled prior to April 29, 2021, but became disabled on that date when he became a person closely approaching advanced age, and has continued to be disabled through the date of the administrative decision.  (R. 801-19).

Plaintiff filed a Complaint in this Court on December 27, 2022.  (Compl., ECF No. 1). On December 31, 2022, Plaintiff consented to my jurisdiction in this matter.  (Consent, ECF No. 4).  On May 15, 2023, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 10).  On June 13, 2023, the Commissioner filed a response (Def.'s Br., ECF No. 11), and, on June 23, 2023, Plaintiff filed a reply brief (Pl.'s Reply Br., ECF No. 12).

II.     **FACTUAL BACKGROUND**

The Court has reviewed the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on April 30, 1971, and he was forty-three years old on his alleged disability onset date.  (R. 156).  He completed the eleventh grade.  (R. 183).  Plaintiff previously worked as a restaurant chef and a cook at a nursing home.  (*Id.*).

A.      **Medical Evidence**

In 2015 and 2016, Plaintiff presented to the Mercy Philadelphia Hospital's emergency department, Strawberry Mansion Health Center, Sayre Health Center, Penn Pain Medicine, and Penn Medicine Division of Rheumatology, complaining of sinus headaches, nosebleeds, chronic abdominal pain and back pain, chronic left knee pain, chronic right hip pain, depression, and panic attacks.  (R. 245-81, 414, 419, 470-73, R. 476-94, 495-675).  He also underwent right inguinal hernia surgery.  (R. 413).  His physical and mental status examinations were generally unremarkable, and a CT scan of the abdomen/pelvis was normal.  (R. 273-75, 415-16, 419, 512-13, 580-97).  He was prescribed Elavil, Tizanidine, and Etodolac, but the medications either had side effects or did not help him.  (R. 476, 480, 484, 489).  Plaintiff also indicated that he was being seen by a psychiatrist or social worker, and he was advised to resume physical therapy. (R. 484).

On November 24, 2015, Jeffrey Thorley, M.D., performed an internal medicine examination at the State agency's request.  (R. 290-303).  Dr. Thorley reported that Plaintiff had a cane in his left hand and a left knee brace.  (R. 291).  Plaintiff declined to toe/heel walk and squat because of back pain, and he showed only 30 degrees of flexion.  (R. 292-93).  X-rays of the lumbar spine were normal.  (R. 293, 303).  Dr. Thorley diagnosed hypertension and possible osteoarthritis.  (R. 293).

3

On the same day, Plaintiff was examined by Ronald Karpf, Ph.D., a consultative examiner.  (R. 304-12).  Plaintiff said that he had been seeing a psychologist and a psychiatrist at the Dunbar Clinic twice a week since January 2015.  (R. 305).  He reported problems with sleep disturbance, appetite and weight loss, dysphoric moods, feelings of hopelessness and worthlessness, concentration difficulties, excessive worry, irritability, restlessness, panic attacks a couple of times per week, breathing difficulties, sweatiness, dizziness, paranoid ideation, and short-term memory deficits.  (R. 305-306).  The mental status findings were largely normal, but Dr. Karpf did find that Plaintiff had a constricted affect, impaired attention and concentration, impaired recent memory, somewhat limited general fund of information, and mild to moderate impairment of immediate retention.  (R. 306-08).  Plaintiff was diagnosed with an adjustment disorder with mixed anxiety and depressed mood, panic disorder, and cannabis use disorder, severe.  (R. 308).

Dr. Karpf completed a mental Medical Source Statement of Ability to Do Work-Related Activities ("MSS").  (R. 310-12).  He opined that Plaintiff had mild limitations understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions; moderate limitations understanding and remembering complex instructions, carrying out complex instructions, making judgments on complex work-related decisions, and interacting appropriately with the public, supervisors, and co-workers; and marked limitations responding appropriately to usual work situations and changes in a routine work setting.  (R. 310-11).

On December 8, 2015, State agency reviewer Timothy Ostrich, Psy.D., opined that Plaintiff had no more than moderate limitations in understanding and memory, concentration and persistence, social interactions, and adaptation.  (R. 82-84).

On February 18, 2016, Maureen McKenna, a physical therapist, completed a physical

MSS.  (R. 315).  She opined that Plaintiff could stand/walk for two hours; sit for six hours; occasionally lift and carry 10 pounds; never stoop, crouch/squat, or climb ladders; occasionally climb stairs; and reach overhead 10% of the workday.  (R. 314).  She stated that he would need to use a cane or other assistive device, to shift position at will, and to be absent from work four days per month.  (R. 313-15).  The physical therapist also indicated that his pain or other symptoms would constantly interfere with the attention and concentration required to perform simple work tasks.  (R. 315).  Additionally, she indicated that Plaintiff was incapable of tolerating the work stress of "low stress" jobs.  (*Id.*).  Ms. McKenna stated that her contact with Plaintiff was limited to one functional capacity evaluation visit.  (R. 313).  She explained that Plaintiff had lumbar pain because of a childhood injury and bilateral knee pain; his face was surgically reconstructed; he had a sticking sensation in the lumbar region, soreness in the neck, difficulty walking, and friction in the knees; the lumbar pain was constant, the knee pain was aggravated by the weather, and he had difficulty bending over because of pressure in his face; he was dizzy and had groin pain when he stooped or crouched/squatted; he had lower back pain when he lifted his arms overhead; his physical condition was affected by his depression and anxiety; and the symptoms and limitations began fourteen years ago.  (R. 313-15).  She summarized her overall assessment by stating that Plaintiff had complaints and symptoms in "many different areas – shoulders, wrists, back[, and] knees [and] with all [of the] tasks in this evaluation."  (R. 315).

In a "To Whom It May Concern" letter dated August 31, 2016, Dr. Bates identified herself as the primary care provider for Plaintiff and observed that she had treated him for several years.  (R. 316).  She indicated that Plaintiff had a history of hypertension, chronic lower back pain, depression, sinus surgery, and chronic facial pain.  (*Id.*).  Dr. Bates opined that Plaintiff was unable to work due to problems with walking and standing for prolonged periods of

time.  (*Id.*).

The primary care physician's treatment records showed that, from November 2016 through November 2017, Plaintiff reported that he had chronic knee, groin, and back pain, difficulties with eating and breathing, headaches, ankle swelling and red marks on his skin, depression, and anxiety.  (R. 677, 681, 693, 705-07, 715, 722, 743, 747).  He also expressed concern about possible blood clots and his G6pd deficiency.  (R. 705).  Plaintiff's cane was discontinued, and he was subsequently prescribed new left knee and back braces, with Plaintiff reporting that the back brace had helped him.  (R. 690, 715, 722, 754).  Dr. Bates prescribed Savella, and, after Plaintiff had stated that it did not help with his pain, started him on Lyrica. (R. 681, 677-78).  Dr. Bates subsequently prescribed Hydroxyzine and noted that Plaintiff was seeing a therapist for his mental health issues, which was helping him.  (R. 705, 708, 734, 736). The primary care physician continued him on Venlafaxine, helped him find a new psychiatrist, and agreed with the psychiatrist that Plaintiff could take Cymbalta.  (R. 719-20, 734, 737).

On November 28, 2016, Plaintiff underwent a comprehensive biophysical evaluation at Dunbar Community Counseling Services ("Dunbar").  (R. 462).  The results of Plaintiff's mental status examination were largely unremarkable, but he was found to have passive suicidal and homicidal ideation and visual hallucinations.  (R. 465).  It was recommended that he continue with weekly outpatient therapy and meet with a psychiatrist.  (R. 467).  A Dunbar treatment plan dated October 19, 2017 stated that Plaintiff had problems with meeting his treatment goals.  (R. 459-60).  On March 13, 2019, Dunbar conducted a comprehensive re-evaluation of Plaintiff.  (R. 1177).  The outpatient therapist described Plaintiff as resistant to treatment, paranoid, and attention seeking with a tendency to blame others for his behavior.  (*Id.*).  She observed that he had failed to implement treatment recommendations and inconsistently attended therapy sessions.  (*Id.*).  The mental status findings were largely normal, although Plaintiff was found to

have suicidal ideation, mildly impaired long-term memory, low insight, and low and impaired judgment. (R. 1181-82). Dunbar continued Plaintiff on weekly outpatient therapy and medication management. (R. 1184-85).

On December 17, 2019, Plaintiff was seen by Dr. Bates. (R. 1095). He reported that he needed carpal tunnel braces and was still having panic attacks. (R. 1095, 1097). Dr. Bates provided him with splints for his wrists and prescribed Buspirone for anxiety. (R. 1098). X-rays of Plaintiff's right elbow performed on February 3, 2020 and a May 4, 2021 MRI of his brain showed normal results. (R. 1106, 1112). Plaintiff was seen by Jefferson Rheumatology on July 14, 2021 and July 8, 2022. (R. 958). He reported that he had been on Humira since 2018 or 2019, which had helped clear up his skin and improved his joint pain, had nerve damage, chronic joint pain, and chronic back pain, walked with a cane and could not bend down too far, and had bilateral carpal tunnel syndrome, bilateral elbow and shoulder pain, and a left knee meniscal tear. (R. 962, 1053). Plaintiff was found to be stable on his current regimen. (R. 964-66, 1053-54, 1056). X-rays of the knees and the lumbar and cervical spine taken on July 17, 2021 revealed no significant abnormalities. (R. 1031-32). Dunbar updated Plaintiff's treatment plan on December 20, 2021, noting that he had made some progress on controlling his anger. (R. 1174-75).

Dr. Bates completed a Physical Residual Functional Capacity Assessment (Physical RFC Assessment) on August 25, 2022, and a Medical Assessment of Ability to Do Work-Related Activities (Mental) (Mental RFC Assessment) on August 30, 2022. (R. 1084-93). In her Physical RFC Assessment, the primary care physician opined that Plaintiff could sit for less than two hours and stand/walk for less than two hours; needed a job permitting him to shift positions at will and to take unscheduled breaks; could occasionally lift and carry less than ten pounds, rarely lift and carry ten pounds, never crouch, stoop, or kneel, rarely twist, and occasionally climb stairs; did not have significant restrictions with reaching, handling, or fingering; would be

7

off task 25% or more of a typical workday and absent more than four days per month; and could never tolerate exposure to temperature extremes, dust, humidity, hazards, fumes, odors, and chemicals.  (R. 1084-86).  Dr. Bates listed psoriatic arthritis, hypertension, ankylosing spondylitis, and chronic knee osteoarthritis as the diagnoses supporting her assessment.  (R. 1084).  She explained that Plaintiff was diagnosed with psoriatic arthritis and ankylosing spondylitis a few years ago.  (R. 1087).  She stated that, before the diagnosis, Plaintiff had experienced crippling back pain and instability, and, while there has been "some improvement with treatment," he "is still severely limited and treatment affects his immune system which puts him at high risk for infections." (*Id.*).  Dr. Bates gave Plaintiff a poor prognosis.  (*Id.*).

In her Mental RFC Assessment, Dr. Bates opined that Plaintiff had poor to no ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand, remember, and carry out either complex, detailed, or simple instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  (R. 1089-91).  She concluded that Plaintiff had a fair ability to maintain personal appearance and to use judgment.  (R. 1089, 1091).  The primary care physician further noted that Plaintiff was likely to decompensate due to stress and miss three or more days of work per month.  (R. 1092).  Plaintiff was also significantly limited in his ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods.  (*Id.*).  Dr. Bates stated that he would often or frequently fail to complete tasks in a timely manner due to his deficiencies in concentration, persistence, or pace.  (R. 1092).  Dr. Bates identified bipolar disorder and anxiety disorder as the diagnoses supporting her opinions concerning Plaintiff's mental limitations.  (R. 1088).  She explained that Plaintiff had severe anxiety and poor stress management, including frequent episodes of anxiety,

became easily overwhelmed in stressful situations and in performing complex tasks, had problems with focus and remembering instructions due to anxiety, and had emotional instability, especially with respect to dealing with others in structured environments.  (R. 1089-91).

## B.    Non-Medical Evidence

The record also contains non-medical evidence.  Documentation showed that Plaintiff received home health care services, including assistance with kitchen work, housekeeping, transportation, ambulation, meal preparation, laundry, getting out of bed, transfers, bathing, grooming, and dressing  (R. 440-56).

Plaintiff completed an Adult Function Report on October 27, 2015.  (R. 189-200).  He stated that he cannot stand for a long period of time because he experiences sharp pain and weakness in his back, arm, and legs, cannot bend over, is forgetful, and has headaches, dizziness, and difficulty focusing.  (R. 189, 196).  He goes outside for medical appointments, shops for food by phone and by mail, is able to handle money, and watches TV.  (R. 192-94).  Plaintiff indicated difficulties with lifting, squatting, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, paying attention, concentration, understanding, following instructions, using hands, getting along with authority figures and others, and handling stress and changes in routine.  (R. 194-95).  He could walk one block before having to rest for five to ten minutes.  (*Id.*).  Plaintiff reported that he was prescribed a cane and a brace/splint in 2015 and uses the devices every day.  (*Id.*).  In a Supplemental Function Questionnaire, Plaintiff explained that the pain was caused by injuries to his back and knee and by sinus surgery.  (R. 197).  Pain medications do not provide any relief.  (R. 198).  Plaintiff has attended physical therapy and been referred to a psychologist/psychiatrist for help coping with the pain.  (*Id.*).

At the February 22, 2018 administrative hearing, Plaintiff testified that a blood disorder, nerve damage, facial reconstruction surgery, carpal tunnel syndrome, and arthritis in his knee and

hands limit his abilities to move and lift his arms and bend over.  (R. 33-39).  He can sit for about

twenty minutes, cannot stand for long periods, and lays in bed twelve hours a day.  (R. 48-49,

52-53).  Plaintiff also reported that he has panic attacks, depressive symptoms, and does not like

to be around other people.  (R. 40-46).  He claimed that the panic attacks have gotten worse

despite taking medications to treat them, and he was uncertain whether the therapy has helped

with his mental health issues.  (R. 40-46).  Plaintiff further testified that a home health care

worker helps him with basic activities..  (R. 47).  He has a knee and back brace and uses a cane

whenever he leaves the house.  (R. 49-51).

At the September 8, 2022 administrative hearing, Plaintiff explained that he continues to

receive home health care services from 9 a.m. to 4 p.m., Mondays through Sundays, through an

agency.  (R. 833-35, 837, 842-43).  Plaintiff only leaves his home to go to the store.  (R. 833).

He can walk for about two blocks with a cane, stand for five to seven minutes, and sit for five to

ten minutes.  (R. 843-44).  He receives Humira injections in his legs every other week, but the

injections have only cleared up some of his blisters.  (R. 838-40).  He cannot take pain

medications because of his blood disorder.  (R. 839).

## III.   LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that she cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. §

1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, then the
> Commissioner considers in the second step whether the claimant has
> a "severe impairment" that significantly limits his physical or

> mental ability to perform basic work activities.  If the claimant
> suffers a severe impairment, the third inquiry is whether, based on
> the medical evidence, the impairment meets the criteria of the
> impairment listed in the "listing of impairments," . . . which result
> in a presumption of disability, or whether the claimant retains the
> capacity to work.  If the impairment does not meet the criteria for a
> listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the severe impairment, the claimant has the
> residual functional capacity to perform his past work.  If the
> claimant cannot perform his past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4).  The

disability claimant bears the burden of establishing steps one through four.  If the claimant is

determined to be unable to resume previous employment, the burden shifts to the Commissioner

at step five to establish that, given the claimant's age, education, work experience, and mental

and physical limitations, she is able to perform substantial gainful activities in jobs existing in

the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  The Third Circuit has instructed, "A single piece of evidence

will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict

created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other

evidence . . . or if it really constitutes not evidence but mere conclusion."  *Kent v. Schweiker*,

710 F.2d 110, 114 (3d Cir. 1983).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The Court has plenary review of legal

issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## IV.   ALJ'S DECISION

In his decision, the ALJ made the following findings:

1.   The claimant has not engaged in substantial gainful activity since the date of
     application, August 18, 2015 (20 CFR 416.971 *et seq.*).

2.   Since the date of application, August 18, 2015, the claimant has had the following
     severe impairments: psoriatic arthritis; carpal tunnel syndrome; osteoarthritis left
     knee; depression; anxiety; post-traumatic disorder ("PTSD"); and bipolar disorder
     (20 CFR 416.920(c)).

3.   Since August 18, 2015, the claimant has not had an impairment or combination of
     impairments that meets or medically equals the severity of one of the listed
     impairments in 20 CFR Part 404, Subpart P, Appendix I t (20 CFR 416.920(d),
     416.925 and 416.926).

4.   After careful consideration of the entire record, the undersigned finds that since
     August 18, 2015, the claimant has the residual functional capacity to perform
     sedentary work as defined in 20 CFR 416.967(a) except no climbing ropes,
     ladders, or scaffolds; other postural activities would be performed occasionally;
     no constant reaching, fingering or handling (does not preclude frequent); and
     simple, repetitive tasks with only occasional changes in the work setting and
     occasional contact with the public, coworkers, and supervisors.

5.   Since August 18, 2015, the claimant has been unable to perform any past relevant
     work (20 CFR 416.965).

6.      Prior to the established disability onset date, the claimant was a younger

         individual age 45-49.  On April 29, 2021, the claimant's age category changed to

         an individual closely approaching advanced age (20 CFR 416.963).

7.      The claimant has a limited education (20 CFR 416.964).

8.      Prior to April 29, 2021, transferability of job skills is not material to the

         determination of disability because using the Medical-Vocational Rules as a

         framework supports a finding that the claimant is "not disabled" whether or not

         the claimant has transferable job skills.  Beginning on April 29, 2021, the

         claimant has not been able to transfer job skills to other occupations (See SSR 82-

         41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.      Prior to April 29, 2021, the date the claimant's age category changed, considering

         the claimant's age, education, work experience, and residual functional capacity,

         there were jobs that existed in significant numbers in the national economy that

         the claimant could have performed (20 CFR 416.969 and 416.969a).

10.    Beginning on April 29, 2021, the date the claimant's age category changed,

         considering the claimant's age, education, work experience, and residual

         functional capacity, there are no jobs that exist in significant numbers in the

         national economy that the claimant could perform (20 CFR 416.960(c) and

         416.966).

11.    The claimant was not disabled prior to April 29, 2021, but became disabled on

         that date, and has continued to be disabled through the date of this decision (20

         CFR 416.920(g)).

(R. 803-19).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 819).

## V.    DISCUSSION

Plaintiff raises three claims in his request for relief: (1) the ALJ erroneously failed to defer to the opinions of a treating physician and instead relied solely on her own lay intuition and the outdated opinion of a non-examining State agency reviewing psychologist; (2) the ALJ erred by not explaining why she was omitting credible mental limitations from her RFC finding; and (3) the ALJ erroneously failed to consider Plaintiff's need for 49 hours of home health care services per week in assessing his RFC.  (Pl.'s Br., ECF No. 6, at 2).  It is undisputed that this case involves a closed disability period, beginning on December 20, 2014 (the alleged disability onset date) through April 28, 2021 (the day before Plaintiff was found to be disabled).  (Pl.'s Br., ECF No. 10, at 2; Def.'s Br., ECF No. 11, at 4 & n.1, 11).

### A.    The Medical Opinions

Because Plaintiff filed his application for benefits before March 27, 2017,[1] medical opinions are assessed according to 20 C.F.R. § 416.927.  Treating medical source opinions are generally entitled to controlling weight, or at least substantial weight.  *See Fargnoli v. Massanari*, 247 F. 3d 34, 43 (3d Cir. 2001).  A treating source's opinion is only entitled to controlling weight if it is both: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 416.927(c)(2).  If not accorded controlling weight, the treating source's opinion is evaluated under the same standards applicable to other medical opinions.  *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007) (citation omitted).  The ALJ may give more or less weight to a medical opinion based on: (1) the length of the treatment

---

[1]  The regulations providing for the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. § 416.920c  (prescribing rules for new decisions which apply to claims filed before, and after, March 27, 2017). The amended regulations are not applicable to this case.

relationship and frequency of examination; (2) the nature and extent of examination; (3) the

supporting explanations provided for the opinion; (4) the consistency of the opinion with the

records as a whole; (5) the treating source's specialization; and (6) any other relevant factors.  20

C.F.R. § 416.927(c)(1)-(6).  When faced with conflicting medical opinions, an ALJ may choose

who to credit but "must consider all the evidence and give some reason for discounting the

evidence he rejects."  *Becker v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir.

2010).  Although the ALJ need not credit every medical opinion, she must consider every

medical opinion.  20 C.F.R. § 416.927(b)-(c).  Her explanation "must be sufficient enough to

permit the court to conduct a meaningful review."  *Burnett*, 220 F.3d at 119-20.

Plaintiff argues that the ALJ, instead of deferring to the multiple medical source opinions

regarding his mental and physical limitations, relied solely upon the outdated opinion of a non-

examining State agency medical source and her own lay intuition.  (Pl.'s Br., ECF No. 10, at 3-

10).  He argues that the ALJ did not properly evaluate the following six documents as medical

source opinions: (1) a February 26, 2019 letter from Dr. Bates (R. 6); (2) the MSS signed by

Maureen McKenna, Plaintiff's physical therapist, on February 18, 2016 (R. 313-15); (3) Dr.

Bates's letter dated August 31, 2016; (4) the Physical RFC Assessment completed by Dr. Bates

on August 25, 2022 (R. 1084-87); (5) Dr. Bates's August 30, 2022 Mental RFC Assessment (R.

1088-93); and (6) the November 24, 2015 psychiatric evaluation conducted by Dr. Karpf, a

consultative examiner (R. 304-12).  (Pl.'s Br., ECF No. 11, at 3-10; Pl.'s Reply Br., ECF No. 12,

at 1-2).  He also argues that that the ALJ committed reversible legal error by relying on the

outdated opinion of Dr. Ostrich, a State agency psychologist who offered the only medical

opinion contradicting the assessments provided by Dr. Bates, Ms. McKenna, and Dr. Karpf.

(*Id.*).  The Acting Commissioner asserts that substantial evidence supports the ALJ's decision to

give little weight to Dr. Bates's opinions and that she did not commit reversible error in

assessing the weight to be accorded the opinions proffered by the physical therapist and the consultative examiner.  (Def.'s Br., ECF No. 11, at 7-14).

I conclude that the ALJ properly evaluated Dr. Bates's August 2016 and February 2019 letters and her August 2022 Physical RFC Assessment, and opinions submitted by the physical therapist, the consultative examiner, and the State agency psychologist.  As to Dr. Bates's August 2022 Mental RFC Assessment, I determine that, assuming arguendo that the ALJ erred by citing to Plaintiff's non-compliance with mental health treatment without articulating her consideration of the possible reasons for his non-compliance, any error was harmless.

### 1.   Dr. Bates's February 26, 2019 Letter

It is undisputed that the ALJ did not mention Dr. Bates's February 26, 2019 letter.  (*See* Pl.'s Br., ECF No. 10, at 5; Def.'s Br., ECF No. 11, at 8).  However, it is also clear that this letter was submitted to the Appeals Council after it had notified Plaintiff that his request for review of the initial ALJ decision was untimely and asked him to address why he did not file the request in a timely fashion.  (R. 7).  Accordingly, Dr. Bates explained that Plaintiff's condition "prevented him from getting out of the house and as a result he missed many appointments and deadlines" and "should be excused for any lateness as his medical condition was the cause."  (R. 6).  The Appeals Council found that there was good cause to excuse the delay, but nevertheless denied Plaintiff's request for review on the merits.  (R. 1-3).  Plaintiff does not contest the Acting Commissioner's observation that this letter, which was submitted to the Appeals Council for the purpose of explaining why the request for review was filed late, was not made part of  the record and does not constitute an opinion under the applicable regulations.  (Def.'s Br., ECF No. 11, at 8) (citing 20 C.F.R. § 416.927(a)(1)).  Instead, he indicates that her assertion constitutes an improper *post hoc* rationalization for the ALJ's decision because the ALJ did not cite this rationale as the basis for rejecting the letter.  (Pl.'s Reply Br, ECF No. 12, at 1) (citing Def.'s Br.,

ECF No. 11, at 8-9; R. 815-16).  But the letter was not properly before the ALJ in the first place.

### 2.    Ms. McKenna's MSS

The ALJ explicitly considered the second document cited by Plaintiff, the MSS executed by Ms. McKenna, Plaintiff's physical therapist, and decided to give this assessment little weight because the extreme limitations were not supported by the physical therapist's own treatment records or by the record as a whole, which generally showed intact motor strength and sensation of the claimant's bilateral upper and lower extremities.  (R. 816).  The ALJ's findings are supported by substantial evidence.  (*Id.*).  For instance, the ALJ indicated that the physical therapist proffered her opinion after only "one functional evaluation."  (R. 816) (citing R. 314). Furthermore, as the ALJ also noted in discounting Ms. McKenna's opinion. the medical record generally showed both intact motor strength and sensation in Petitioner's extremities.  (R. 248, 274, 29293, 580, 816 (ALJ's decision), 1054).

### 3.    Dr. Bates's August 31, 2016 Letter

The ALJ gave Dr. Bates's August 31, 2016 letter little weight because it was inconsistent with the clinical or objective findings or Plaintiff's treatment history and appeared to be based on Plaintiff's subjective complaints.  (R. 816) (citing R. 676-711, 712-58, 1094-1173).  She further relied on the absence of any indication in the record that Plaintiff had reduced muscle strength or sensation and the fact that a finding of disability is an issue reserved to the Commissioner.  (R. 816).  Plaintiff does not dispute the ALJ's finding that "this was an opinion on a legal issue reserved to the Commissioner" (*id.*), but he does argue that, as to Dr. Bates's opinion concerning Plaintiff's difficulty with prolonged standing or walking, the ALJ erred by failing to give any deference to this opinion.  (Pl.'s Br., ECF No. 10, at 5; Pl.'s Reply Br., ECF No. 12, at 2). Plaintiff asserts that the ALJ never even acknowledged that this opinion, or the other opinions provided by Dr. Bates, came from a treating source.  (Pl.'s Br., ECF No. 10, at 4).  Additionally,

he indicates that the ALJ, by rejecting the opinion based on an alleged lack of deficits in motor strength or sensation, improperly substituted her lay reading of the objective medical findings for the opinion of the treating physician. (*Id.* at 5-6). I conclude that the ALJ appropriately evaluated the treating physician's opinion.

The ALJ referred on several occasions to Plaintiff's "PCP," identifying Dr. Bates as "his primary care physician." (*See, e.g.*, R. 811 (summarizing November 3, 2016 examination by "his PCP"), 812 (reciting details of December 29, 2016 "PCP" visit)) (citing R. 705-06, 707). Plaintiff does not argue that the ALJ erred by failing to accord "controlling weight" to his treating physician's opinions. He instead contends that, even if the opinion was not entitled to controlling weight, the opinion of a treating physician should always be accorded special deference under the applicable regulations. (Pl.'s Br., ECF No. 10, at 3-4). However, it is well established that, if it is not entitled to controlling weight under the pre-2017 framework, the opinion of a treating physician is treated under the same general standard applicable to other medical opinions. *See Salles*, 229 F. App'x at 148. "[T]he ALJ is [then] free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record." *Id.*

Given this framework, the ALJ properly accorded little weight to Dr. Bates's August 31, 2016 assessment of Plaintiff's ability to stand or walk based on her consideration of the clinical findings, the treatment history, and the basis provided for the treating physician's opinion. (R. 816); 20 C.F.R. § 416.927(c)(3), (4). Plaintiff does not dispute or even mention the ALJ's finding that the assessment appeared to be based on the Plaintiff's subjective complaints. (R. 816). The ALJ also cited to Dr. Bates's treatment records (*id.*) (citing R. 676-711, 712-58, 1094-1173), and, in her records, the primary care physician described Plaintiff as "non-ill-appearing," "healthy-appearing," "well-nourished," and "well-developed." (R. 724, 734, 738, 1097). In

18

addition, as I have already explained (*see supra* Section V.A.3.), the ALJ's determination that

there was no indication in the record that the claimant had reduced muscle strength or sensation

is supported by substantial evidence.  (R. 816 (ALJ's decision), 248, 274, 292-93, 580, 1054).

### 4.    Dr. Bates's August 2022 Assessments[2]

### a.    Physical

The ALJ evaluated the treating physician's physical RFC assessment as follows:

> This assessment is given little weight because it is not consistent
> with the clinical or objective findings or the claimant's treatment
> history ([R. 676-711, 712-58, 1094-1173]) and appears to be
> primarily based on the claimant's subjective complaints.  There is
> no indication in the record that the claimant has reduced muscle
> strength and/or sensation or any other objective finding to support
> such excessive stand/walk/sit and lift/carry limitations.

(R. 815).

Plaintiff asserts that the ALJ did not accord the treating physician's opinion the deference

it was owed under the applicable regulations and instead proceeded to employ her supposed

"expertise" against the expertise of an acceptable medical source by proffering her own reading

of the medical evidence.  (Pl.'s Br., ECF No. 5, at 4-5; Pl.'s Reply Br., ECF No. 12, at 2).

---

[2]  It is undisputed that the relevant disability period in this case closed on April 29, 2021 and that Dr. Bates's Physical and Mental RFC Assessments were not completed until August 2022.  (Def.'s Br., ECF No. 11, at 11) (citing Pl.'s Br., ECF No. 10, at 1); Pl.'s Br., ECF No. 10, at 2 (citing R. 802).  The ALJ did not discount the assessments on the basis that the physician's opinions post-dated the closed disability period.  Instead, she indicated that Dr. Bates treated Plaintiff during the closed disability period and then appropriately considered the treating physician's August 2022 opinions, according them little weight for the reasons contested by Plaintiff.  (R. 810-16) (citing R. 677, 681, 689, 693,  697, 705, 707, 715, 719-20, 722, 734-36, 743, 747, 754, 1095); *Williams v. Astrue*, 493 F. App'x 866, 868-69 (9th Cir. 2012) (stating that ALJ must consider all medical opinion evidence under Social Security regulations); *Parker v. Saul*, No. 19-1621, 2020 WL 670355, at *3 (W.D. Pa. Feb. 11, 2020) (considering whether medical opinions post-dating closed period "relate back" to period).  The Acting Commissioner does not argue that the 2022 assessments should have been rejected or not considered because they were completed after the relevant period had closed.  Accordingly, I will consider the merits of Plaintiff's challenges to the ALJ's reasons for according little weight to the August 2022 Physical and Mental RFC Assessments.

However, as I have explained in the previous subsection, "the ALJ is free to give [a treating source's] opinion less than controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record." *Salles*, 229 F. App'x at 148. Moreover, the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). In making the RFC determination, the ALJ is "free to accept some medical evidence and reject other evidence," so long as she "provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).

I find that the ALJ provided a meaningful and well-supported explanation for why discounted the Physical RFC Assessment. She specifically found that Dr. Bates's assessment appeared to be based in large part on the Plaintiff's subjective complaints and was inconsistent with the clinical findings or treatment history. (R. 815); *see also* 20 C.F.R. § 416-927(c)(3)-(4). She then explained that there was no indication that the Plaintiff had reduced muscle strength or sensation or any other objective finding supporting the physician's excessive stand/walk/sit and lift/carry limitations. (R. 815) (citing R. 676-711, 712-58, 1094-1173). Plaintiff does not mention or contest the ALJ's "subjective complaints" finding, and substantial evidence supports the ALJ's "reduced muscle strength and/or sensation" determination. (R. 815 (ALJ's decision), 248, 274, 292-93, 580, 1054; *see supra* Section V.A.3.).

### b.   Mental

After considering her physical assessment, the ALJ turned to Dr. Bates's Mental RFC Assessment:

> This assessment is given little weight as Dr. Bates is not a mental health treatment specialist and again appears to rely primarily on the claimant's subjective complaints. In fact, throughout the record, the claimant's mental status examinations were relatively normal with orientation times three and normal thought process, and it is questionable whether the claimant ever consistently participated in

individual therapy and or medication management with the psychiatrist. ([R. 458-68, 1174-1186]).  Moreover, the claimant's therapist specifically noted in March 2019 that he failed to implement treatment recommendations, inconsistently attended sessions, and blamed others for his lack of progress.  ([R. 1177]).  Accordingly, this record supports no more than moderate limitation in any mental functional domain.

(R. 815-16)

Two of Plaintiff's arguments are substantially identical to the assertions he raises with respect to the treating physician's other opinions.  First, he contends that, under the regulations in effect at the time he filed his application, an ALJ cannot discount a medical opinion as unsupported while overlooking the deference owed to a treating source's medical opinion.  (Pl.'s Br., ECF No. 10, at 6-7; Pl.'s Reply Br., ECF No. 12, at 2).  Second, Plaintiff indicates that the principle that the ALJ is barred from substituting her lay opinion for the medical opinions of experts is especially "profound" in a mental disability case.  (Pl.'s Br., ECF No. 10, at 6-7) (quoting *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018)).

The ALJ discounted the opinion for several reasons, explaining that  Dr. Bates was not a mental health treatment specialist,  she appeared to rely primarily on the subjective complaints of Plaintiff, and Plaintiff's mental status examinations were relatively normal.  (R. 815).  I conclude that the ALJ  appropriately considered Dr. Bates's assessment of Plaintiff's mental limitations and "clearly explaine[ed her reasons]" for rejecting the treating physician's opinion.  *Salles*, 229 F. App'x at 148; *see also Zirnsak*, 777 F.3d at 614; *Chandler*, 667 F.3d at 362.  As the Plaintiff acknowledges, "[t]he ALJ gave this opinion 'little weight' because Dr. Bates was not a mental health specialist and because the opinion 'appears to rely on the claimant's subjective complaints.'"  (Pl.'s Br., ECF No. 10, at 6) (citing R. 816).  It is undisputed that Dr. Bates, an internist and Plaintiff's primary care physician, does not specialize in the treatment of mental impairments.  20 C.F.R. § 416.927(c)(5) (identifying "treating source's specialization" as factor

that could be considered).  Plaintiff also does not specifically contest the ALJ's finding that the

Mental RFC Assessment was based in large part on his own subjective complaints.  As to the

existence of "clinical or objective" support for the physician's assessment, the ALJ reasonably

explained that the mental status examinations throughout the record were relatively normal with

"orientation times three" and normal thought process.  (R. 815-16).  This finding of "relatively

normal" mental status findings is supported by substantial evidence.  (R. 808-11, 813 (ALJ's

decision), 257, 274, 306-08, 465, 579, 1181).  For example, Dr. Karpf performed a psychiatric

evaluation of Plaintiff at the request of the State agency, and he found that, upon mental status

examination, Plaintiff had cooperative demeanor and responsiveness, adequate manner of

relating, social skills, and overall presentation, appropriate eye contact, normal speech, coherent

and goal directed thought processes, orientation times three, average cognitive functioning, and

good insight and judgment.  (R. 809 (ALJ's decision), 306-08).  Although Dr. Karpf found

Plaintiff's attention, concentration, recent memory, and immediate retention and recall were

impaired, the consultative examiner qualified his findings by explaining that his concentration

difficulties were "only in social situations, but not in cognitive tasks" and he "could remember 4

digits forward and 4 digits backwards."  (R. 307).

     Plaintiff also contends that the ALJ erred by rejecting the opinion of a treating physician

regarding mental limitations on the basis of non-compliance with treatment without considering

the possible reasons for such non-compliance, including the Plaintiff's own mental illnesses.

(Pl.'s Br., ECF No. 10, at 7-8; Pl.'s Reply Br., ECF No. 12, at 2).  He claims that, in a similar

case, a court in the Middle District of Pennsylvania concluded that, because the ALJ relied on the

claimant's non-compliance while failing to articulate the ALJ's consideration of the possibility

that non-compliance was caused by the claimant's own mental impairments, it could not

determine whether the ALJ's decision was supported by substantial evidence.  (Pl.'s Br., ECF

No. 10, at 8) (quoting *Warne v. Saul*, No. 3:19-cv-01489-CCC-GBC, 2020 WL 6787162, at *12-13 (M.D. Pa. Oct. 2, 2020), *report and recommendation adopted by* 2017 WL 4246869 (M.D. Pa Sept. 25, 2017)) (alterations in original).  I conclude that, even if the ALJ committed an error by failing to articulate whether Plaintiff's non-compliance was caused by his mental impairments, any error was harmless.

"Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals."  *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (3d. Cir. 2009)).  An error is harmless when it does not affect the remainder of the analysis or the outcome.  *Whitten v. Soc. Sec. Admin, Comm'r*, 778 F. App'x 791, 796 n.2 (11th Cir. 2019) (per curiam) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).  The plaintiff "therefore must '*explain* [] . . . how the . . . error to which [he] points could have made any difference.'"  *Id.* (quoting *Shinseki*, 556 U.S. at 409) (alteration in original).

Plaintiff has failed to meet this burden.  Assuming that the ALJ should have considered why Plaintiff did not comply with his treatment before citing Plaintiff's non-compliance as a reason for discounting the Mental RFC Assessment, this error could not have made any difference because the ALJ provided other specific reasons, which are supported by substantial evidence, for discounting Dr. Bates's assessment of Plaintiff's mental limitations.  *See Alexander v. Saul*, 817 F. App'x 401, 404 (9th Cir. 2020) ("However, the error [discrediting the doctor's opinions on the factually incorrect basis that he relied on the claimant's self-reported pain allegations] was harmless because the ALJ's decision was based on other specific and legitimate reasons that are supported by substantial evidence in the record.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)); *Whitten*, 778 F. App'x  at 796  ("This was error [discounting Dr. Bentley's mental opinion because he did not mention that the

claimant received her GED], but it was harmless because the ALJ gave other reasons—all

supported by substantial evidence—for discounting Dr. Bentley's opinion.") (citing *Diorio,* 721

F.2d at 728).  As I have explained, the ALJ appropriately accorded little weight to the treating

physician's assessment on the grounds that: (1) the treating physician was not a mental health

specialist; (2) she relied primarily on Plaintiff's subjective complaints; (3) and Plaintiff's mental

status examinations were generally normal throughout the record.  (R. 815-16).  Even if the

Court were to find that the ALJ erred by not considering Plaintiff's reasons for non-compliance,

such error was harmless because it was neither the sole basis for discounting this opinion nor was

it the basis for denying benefits.[3]  *Cody v. Comm'r of Soc. Sec. Admin.*, No. 9:20-cv-02620-JD-

---

[3]  Plaintiff cites several cases in support of his non-compliance argument, but none of them consider the issue of harmless error.  *See Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011); *Brace v. Astrue*, 578 F.3d 882, 885-86 (8th Cir. 2009); *Kangail* v. *Barnhart,* 454 F.3d 627, 630-31 (7th Cir. 2006); *Tome v. Schweiker*, 724 F.2d 711, 713-14 (8th Cir. 1984); *Warne*, 2020 WL 6787162, at *12-13; *Tobin v. Commissioner of Soc. Sec. Admin.*, No. 1:19-CV-12810 (RMB), 2020 WL 4218396, at *5-7 (D.N.J. Jul. 23, 2020); *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 277-78 (W.D.N.Y. 2005); *Brashears v. Apfel*, 73 F. Supp. 2d 648, 650-52 (W.D. La. 1999); *Mendez v. Chater*, 943 F. Supp. 503, 507-08 (E.D. Pa. 1996);

In *Warne*, the magistrate judge, before recommending remand on the grounds that the ALJ erroneously relied on non-compliance to find that the claimant's alleged symptoms were not as severe as alleged, had already concluded that the ALJ erred by failing to consider whether the claimant's noted improvement qualified as a temporary remission.  *Warne*, 2020 WL 6787162, at *7-13.  In *Tobin v. Commissioner of Soc. Sec. Admin.*, No. 1:19-CV-12810 (RMB), 2020 WL 4218396, (D.N.J. Jul. 23, 2020), the parties agreed that the ALJ assigned less weight to the treating psychiatrist's opinion "because of Plaintiff's non-compliance with treatment," and there was no indication that the ALJ proffered any other reason for discounting the medical opinion, *id.* at *7 (citation omitted).  The court in *Mendez v. Chater*, 943 F. Supp. 503 (E.D. Pa. 1996), concluded that that ALJ did not give proper consideration to claimant's subjective complaints, the reports of her treating physicians, and the combination of the claimant's impairments, *id.* at 506-09.

The other cited cases from courts outside this circuit also involved either multiple errors on the part of the ALJ,  heavy or exclusive reliance by the ALJ on the respective claimant's non-compliance, or, in one instance, the ALJ's specific finding that the claimant's reasons for non-compliance were not believable.  *See Jelinek*, 662 F.3d at 814 (stating that there "are reasons enough to remand" and then adding that there "were a few additional flaws that should be avoided on remand" with the "foremost among them [being] the ALJ's repeated reference to Jelinek's 'medication non-compliance' as a reason for finding her not credible"); *Brace*, 578

MHC, 2021 WL 6012228, at *8 (D.S.C. Oct. 27, 2021) (concluding that, even if ALJ erred by not considering whether inability to afford treatment was reason for non-compliance with diabetes treatment, such error was harmless because non-compliance was not the only reason for finding medical opinion unpersuasive) (citations omitted); *see also, e.g.*, *Lockwood v. Comm'r Soc. Sec. Admin.*, 397 F. App'x 288, 290 (9th Cir. 2010) ("However, this error [relying on lack of compliance as one reason to discount the claimant's testimony] was harmless because the ALJ's other reasons for finding Lockwood not credible were sufficient and were supported by substantial evidence.") (citing *Carmicle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)); *Kevin G. v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-00281-JCF, 2022 WL 16709720, at *6 (N.D. Ga. Mar. 30, 2022) ("Thus, even if the ALJ erred by considering Plaintiff's non-compliance with treatment without considering reasons for that non-compliance, such error was harmless where the medical records cited by the ALJ provide substantial evidence to support the ALJ's RFC determination and discounting of the severity of Plaintiff's claimed limitations.") (citations omitted).

### 5.   Dr. Karpf 's November 24, 2015 Psychiatric Evaluation and Dr. Ostrich's December 8, 2015 Disability Determination Explanation

The ALJ accorded little weight to the evaluation of the consultative examiner, Dr. Karpf,

---

F.3d at 885-86 (upholding ALJ's finding that any notion that claimant's medical impairment prevented him from appreciating need for medication compliance was not "very believable"); *Kangail*, 454 F.3d at 630 ("The administrative law judge thought the plaintiff's inability to hold a job unimportant because she could work when she took her medicine" but failed to consider possibility that lack of compliance was caused by plaintiff's bipolar disorder); *Tome*, 724 F.2d at 713-14 (rejecting ALJ's conclusion that claimant was barred from entitlement to benefit due to failure to follow prescribed treatment and concluding that ALJ lacked medical evidence to disbelieve her corroborated testimony regarding severity of symptoms); *Frankhauser*, 403 F. Supp. 2d at 273-78 (concluding that ALJ's determination that doctor was able to disentangle effects of substance abuse from plaintiff's other mental impairments and that plaintiff was able to work at low-stress unskilled jobs was not supported by record and violated treating physician's rule); *Brashears*, 73 F. Supp. 3d at 651-52 (finding that new evidence regarding why plaintiff was non-compliant submitted to Appeals Council warranted remand because, among other things, "the ALJ's decision relies heavily upon the non-compliance").

and great weight to the assessment proffered by Dr. Ostrich, the State agency psychologist:

> Dr. Karpf's assessment is given little weight because it was made at the beginning of the relevant period, because Dr. Karpf did not have access to all of the claimant's mental health treatment records, and because it is not consistent with the generally normal mental status examinations throughout the record.
>
> . . . . This assessment [by Dr. Ostrich] is given great weight because although it occurred in the beginning of the relevant period it is consistent with mental health treatment notes and with the claimant's mental status examinations ([R. 304-12, 458-68, 1174-86]), as discussed above.

(R. 816).

Plaintiff argues that the ALJ erred in rejecting Dr. Bates's Mental RFC Assessment without considering its consistency with Dr. Karpf's opinion, which assessed marked limitation in his ability to respond appropriately to usual work situations and changes in a routine setting. (Pl.'s Br., ECF No. 10, at 8; Pl.'s Reply Br., ECF No. 12, at 2).  Plaintiff contends that the ALJ committed reversible legal error by relying on the opinion of Dr. Ostrich, who proffered the only contradictory opinion of record, did not examine Plaintiff, and had reviewed almost none of the medical evidence.  (Pl.'s Br., ECF No. 10, at 9; Pl.'s Reply Br., ECF No. 12, at 2) (citing 20 C.F.R. § 416.927(c)(1) stating that examining source's medical opinion is generally given more weight than opinion of non-examining source).

The ALJ appropriately weighed the mental health evaluations proffered by the consultative examiner and the State agency psychologist.  Plaintiff does not dispute that Dr. Karpf's evaluation was conducted at the beginning of the relevant disability period and that the consultative examiner lacked access to all of the Plaintiff's treatment records.  (R. 816).  Furthermore, the ALJ admitted that Dr. Ostrich's assessment also "occurred" at the beginning of the relevant period and that, unlike Dr. Bates and Dr Karpf, the State agency psychologist merely "review[ed] the evidence of record.".  (R. 817).  The ALJ then reasonably weighed the opinions

based on their consistency with the underlying mental health treatment records.  She found that, in contrast with Dr. Ostrich's assessment, Dr. Karpf's opinion was not consistent with the generally normal mental status examinations throughout the record.  (R. 817-18).  As I have already explained the ALJ's finding of "generally normal mental status examinations" is supported by substantial evidence.  (*See supra* Section V.A.4.; R. 808-11, 813 (ALJ's decision), 257, 274, 306-08, 465, 579, 1181).

### B.       The Alleged Omission of Credible Limitations in the RFC Finding

Plaintiff argues that, although the ALJ found at step three of the sequential process that Plaintiff had moderate limitations in concentrating, persisting or maintaining pace, she failed to incorporate these credible limitations in her RFC finding or to explain why they were omitted.  (Pl.'s Br, ECF No. 10, at 10-13;).  He contends that, under *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), a restriction to simple work does not accommodate mid-range limitations in concentrating, persisting, and maintaining pace.  (*Id.* at 12).  The Acting Commissioner responds that the ALJ reasonably analyzed the relevant evidence and developed an appropriate RFC, which adequately accounted for the credibly established limitations by limiting Plaintiff to simple, repetitive tasks. (Def.'s Br., ECF No. 11, at 14-17)  She cites to case law distinguishing *Ramirez* and holding that a restriction to simple, routine, repetitive tasks was adequate to account for moderate limitations in the claimant's ability to maintain concentration, persistence, or pace.  (*Id.* at 17).  In his reply brief, Plaintiff asserts that the case law cited by the Acting Commissioner distinguished but did not overrule *Ramirez*.  (Pl.'s Reply Br., ECF No. 12, at 3-4) (citing *Ramirez*, 372 F.3d at 554; 20 C.F.R. § 416.920a(c)(3)).

In *Ramirez*, the Third Circuit explained that findings of limitation in the broad functional areas, though not an RFC assessment, play a role in steps four and five, and thus need to be accounted for in the RFC and hypothetical to the VE.  *Ramirez*, 372 F.3d at 555.  It held that

ALJ's RFC limiting the claimant to one-to-two step tasks was not sufficient to account for the ALJ's observation at steps two and three that Ramirez "often suffered from deficiencies in concentration, persistence, or pace." *Id.* at 554. The Court also found that the claimant's mental illness impacted her ability to meet production quotas, thus putting at issue her ability to sustain pace. *Id.* at 554-55.

Here, the ALJ determined at step three that Plaintiff had moderate limitations in the functional area of concentration, persistence, or pace, and she subsequently imposed mental restrictions in the RFC that limited Plaintiff to "simple, repetitive tasks with only occasional changes in the work setting and occasional contact with the public, coworkers, and supervisors." (R. 906). The Third Circuit has found similar restrictions adequately account for a claimant's moderate difficulties with concentration, persistence or pace. *See, e.g., McDonald v. Astrue,* 293 Fed. App'x 941, 946 85 n.10 (3d Cir. 2008) (limitation to "simple, routine tasks" was sufficient to account for moderate restrictions in concentration, persistence, or pace because, unlike in *Ramirez*, claimant did not "often" suffer from these deficiencies); *Menkes v. Astrue,* 262 F. App'x 410, 412 (3d Cir. 2008) (same); *see also Jefferson v. Colvin*., No 16-cv-2665, 2017 WL 2199064, at *1 (E.D. Pa. May 18, 2017) (distinguishing *Ramirez* and finding RFC limiting Plaintiff to unskilled work with no fast pace or quota production standards and only occasional contact with the public sufficient to account for moderate limitations in concentration, persistence, and pace); *Cf. Drelling v. Colvin,* No 14-CV-2211, 2016 WL 245288, at *8 (E.D. Pa. Jan. 20, 2016) (finding error where hypothetical made no mention of plaintiff's mental limitations, despite finding moderate impairment in concentration, persistence, and pace). Furthermore, unlike in *Ramirez*, Plaintiff does not identify specific evidence that he struggled with production quotas or contend that the jobs the VE identified required daily production quotas or a degree of pace to maintain employment. *Ramirez*, 372 F.3d at 544-55.

Accordingly, I find that the RFC adequately accounted for Plaintiff's credibly established mental limitations.

### C.     The ALJ's Alleged Failure to Consider Impact of Plaintiff's Need for Home Health Care Services in RFC Assessment

Finally, Plaintiff contends that the ALJ failed to consider the impact of his need for home health care services on his ability to perform work on a regular and sustained basis. (Pl.'s Br, ECF No. 10, at 13). She asserts that the ALJ purportedly ignored the form indicating that Plaintiff required assistance with the most basic activities and that, if the ALJ had any questions about why Plaintiff was provided home health services or which health care provider recommended such services, she should have contacted either the treating medical sources or the home health care agency. (*Id.* at 13-15). The Acting Commissioner responds that the ALJ appropriately inferred that there was insufficient evidence indicating that home health services were medically necessary. (Def.'s Br., ECF No. 11, at 18). She also argues that, in any event, there was no need for the ALJ to discuss this subjective lay opinion because it merely repeated Plaintiff's own subjective allegations, which the ALJ explicitly rejected. (*Id.* at 18-19). In his reply brief, Plaintiff argues that, even if the form for home health services was nothing more than a lay assessment, the ALJ was not free to ignore this lay evidence altogether, especially given the importance of third-party evidence in cases of mental impairment. (Pl.'s Reply Br., ECF No. 12, at 4-6).

A non-medical source's information about a claimant's pain or other symptoms, treatments and medications, and activities of daily living are "an important indicator of the intensity and persistence of [his or her] symptoms." 20 C.F.R. § 416.929(c)(3). Accordingly, the ALJ must consider "any symptom-related functional limitations and restrictions that [the claimant's] . . . nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." *Id.; see also* SSR 16-3p(2)(c), 2017

WL 5180304, at *7 (Oct. 25, 2017) (stating that non-medical sources such as family and friends

may offer information that could be helpful in assessing intensity, persistence, and limiting

effects of symptoms); SSR 85-16, 1985 WL 56885, at *2, 4 (1985) (stating that information from

third party sources may be valuable in assessing individual's level of activities of daily living).

Nonetheless, the failure to appropriately consider third-party lay opinion evidence is harmless

where it is merely duplicative of the plaintiff's own statements or otherwise would not have

changed the outcome.  *See Crosby v. Barnhart*, 98 F. App'x 923, 926 (3d Cir. 2004) (finding any

error in rejecting claimant's fiancé's affidavit harmless where it merely "mirrored her own

description" of her limitations); *Dougherty v. Colvin*, No. 13-289, 2014 WL 401205, at *6 (W.D.

Pa. Aug. 18, 2014) (refusing to remand where it was "evident that [non-medical source's] limited

testimony would not have had an effect on the outcome of the case in light of the medical and

opinion sources already in the record"); *Buffington v. Comm'r of Soc. Sec. Admin.*, No. 12-100,

2013 WL 796311, at *9 (D.N.J. Mar. 4, 2013) (declining to remand case where the plaintiff's

father's testimony was "largely cumulative of Plaintiff's own testimony, which the ALJ

expressly found not credible");.

The ALJ did not err in her consideration of the evidence relating to home health services,

and, if she did err, any error she may have committed was harmless.  As Plaintiff recognizes in

his brief, the ALJ  "acknowledged that [Plaintiff] received home health care services, 9 a.m. to 4

p.m., 49 hours per week" and "stated that documents from Sweet Home Healthcare in 2016 did

not 'explain why he received such services or which medical treatment provider

requested/suggested services.'"  (Pl.'s Br., ECF No. 10, at 13-14) (citing R. 810-11).  Plaintiff

responds to these findings by citing to general statements in the home health care agency

paperwork indicating that Plaintiff needed assistance with various activities.  (*Id.* at 14 (citing R.

443, 446, 448)).  But such conclusory statements support the ALJ's finding that the agency failed

to explain why he was receiving the home health care services or which medical provider requested such services.  In any event, this documentation is "largely cumulative of Plaintiff's own testimony."  *Buffington*, 2013 WL 786311, at *9.  As the ALJ noted, Plaintiff testified that he receives home health care services, 9 a.m. through 4 p.m., 49 hours per week, with a home healthcare aide taking him places and assisting in all aspects of his daily living.  (R. 807 (ALJ's decision), 833-35, 837, 842-43).  The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective medical evidence and treatment history.  (R. 807).  For instance, she found that Plaintiff generally received conservative care when he sought treatment.  (R. 814-815).  Plaintiff does not contest the ALJ's assessment of Plaintiff's own testimony, and this Court accordingly finds that any error concerning the cumulative documentation was harmless.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's Request for Review is **DENIED**.


BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge